All right, looks like we're back. And so we're ready to proceed with the case of Ryan E. v. Entm't Industry Flex Plan and Blue Cross Life and Health Insurance Company. So we're ready to proceed. I don't see Mr. Petty. Your Honor, this is Russell Petty. I'm proceeding by telephone this morning. I'm afraid I was not able to get the video to work. Oh, okay. I didn't realize that. Go ahead. Please proceed. Thank you, Your Honors, and good morning. I guess good afternoon to Judge Hellerstein, and may it please the Court. This is Russell Petty representing Ryan E. And with respect to the standard of review, which I submit is the key issue here in this matter, if the law in this area is clear about anything, it's that when an entity with discretion utilizes another entity to decide claims for it, unless there is an effective delegation of discretionary authority, then the decision will be reviewed de novo. That's the holding, essentially, of every case that addresses this issue before the Court. In particular, it's the holding of the Shane case, which has fairly similar features to the present case. The district judge held that the delegee of fiduciary authority was the one that made the decision and not its agent, its subsidiary, who looked into some of the facts. No, Your Honor. I'm sorry, Your Honor. Is that wrong? That is wrong, Your Honor. The district court was very clear, expressly stated so in its findings, that the decision was made by Anthem U.M. If you look at the record, page 11, lines 26 to 28, that's where the Court addresses that U.M. made the initial denial. And the record, ER 13, line 1, is where the district judge states that U.M. denied the appeal. But is it reasonable? Just a second. Mr. Curtis, I'm sorry, Mr. Petty. It seems, though, that Anthem U.M. is an affiliate of Anthem, and it appears that it was acting as an agent of Anthem rather than as an independent contractor. So I'm trying to understand your position here as to why that was not okay. Well, I mean, that's essentially what happened in this Court's Shane decision. As I'm sure the Court is aware, in Shane you had, just like here, you had trustees with discretionary authority and the ability to delegate. In Shane, the trustees delegated to a vice president of human resources, Mr. Snow, and Mr. Snow utilized the Medical Review Committee, or MRC, to actually make the decisions. Now, Mr. Snow attempted to delegate discretionary authority to the MRC, but this Court in Shane held a plan, did not contemplate that type of delegation, and as a result reviewed, the district court properly reviewed the MRC's decision de novo. So, I mean, there's no question in that fact that the MRC was deciding claims for Mr. Snow and for the trustees, both of whom had discretion, but the fact is, and the law is clear, that no, the entity making the decision actually has to have discretion, Your Honor, and this case was actually directly, the same argument was made in the First Circuit's Rodriguez-Lopez case. In that case, there was a plan entity that had discretion. It utilized a third-party administrator to whom there was no grant of discretion to decide the claims, and the administrator argued at the First Circuit that, well, you know, look, I'm working for the entity with discretion, and what the First Circuit recognized was, okay, yes, you're working for that entity, and you had the power to decide claims, but that doesn't mean you had discretionary authority. Those are two separate things, and if I can quote directly from the decision over at page 23, it says, as we have noted, it just means that SSS, that's the administrator, had the power to decide, but power to decide does not amount to the existence of discretion, and I submit that's the exact same thing here, Your Honor. Anthem-UM may have had the power to decide, but it did not have discretionary authority because there was no effective delegation of discretion. What was the formal relationship between Anthem and Anthem-UM? Your Honor, there's no evidence whatsoever as to the formal relationship. There are some notes on some of the letters that says that, in effect, that Anthem uses Anthem-UM to perform claims handling decisions, but other than that, there's no evidence whatsoever of whether, you know, Anthem-UM was a contractor or an agent. Well, shouldn't we infer that Anthem-UM was the operating arm of Anthem? That's the way Anthem did its work? Well, you know, that's just another way of saying the same thing, Your Honor, that it's an agent, and the law is clear that, no, I mean, you know, the entity actually making the decision has to, well, let me step back a second. You know, if the decision were made by employees of Anthem, it would be Anthem's decision. If it were made by employees of Anthem-UM, it's the decision of Anthem-UM. And if there's some question about, you know, with employees of more than one entity, which was the case in the Campbell and Zerndorfer and Anderson cases, well, then, you know, there has to be a factual decision. Well, who actually made this decision? And, you know, the district court found the decision was made by Anthem-UM. The district court presumed that there was an agency relationship and that Anthem-UM was working for Anthem. And clearly, that's not an unreasonable point of view. But as I pointed out earlier, the MRC was obviously working for Mr. Snow and the trustees in Shane and, you know, Rodriguez-Lopez, the SSS, the plan administrator was clearly working on behalf of the plan. I mean, there's no argument they were, you know, gratuitous who just sort of wandered in off the street and started deciding claims. I mean, they were working for the plan. They were working for an entity with discretion. But they had no discretion themselves. And that, Your Honor, is positive. Counsel, just a moment. It appears that the plan documents unambiguously confer discretionary authority upon the plan's board of trustees to administer the claims, and then it further permits the board to delegate this authority. So I think you're in agreement with that, correct? I completely agree with that, Your Honor. So the board delegated, if I can just kind of just figure out what happened here, but the board delegated its authority to Anthem via administrative services agreement, and then Anthem, I believe, in turn relied upon the services of its authorized agent, Anthem-UM, to review and deny a plan's claim for coverage. It seems that because Anthem-UM acted as Anthem's authorized agent, there's no need. I can't tell if you're arguing that there was a need for a second delegation of discretionary authority. And because it seems like there's no limitation imposed by the law or the plan itself on whom Anthem could rely on as its agent, I'm trying to figure out what was improper here about Anthem-UM's role in evaluating the plaintiff's claim. It seems like this is the way that the Southern District of New York has proceeded and a lot of other district courts have followed that way. I think it's the Zunderfer v. UM Life Insurance Company case. And I realize we don't have authority or we don't have a case in our circuit that really, you know, addresses this, but it looks like the majority or overwhelming number of district courts allow this. So I'm trying to figure out why shouldn't we do that here and what's your best argument for that? Well, first off, Your Honor, and I don't mean to get sidetracked from the court's question, but I do have an issue as to whether there was a proper delegation of authority from the trustees to Anthem. And that's laid out in my papers, and I'm going to cut to the chase with the district court's opinion. Your Honor, there isn't a case, including the Zunderfer and Campbell cases, that stands for the proposition that the court just articulated, which is that if an entity with discretion hires an agent to review claims for it, then discretion is automatically conferred or automatically covers that. What happened in Campbell and Zunderfer and Anderson, which is a similar case, is there was a situation where there were employees of multiple companies involved. Like, for example, in Anderson, there were employees of Unum, a life insurance company, and Unum, I believe, Unum America. And so the question is, and Unum Life had discretion and Unum America did not, and the question is, well, you know, it's a factual question. We see there are employees of numerous companies involved here. Who actually made the decision? In Anderson, the district court said, well, it was made by Unum Provident, and Unum Provident didn't have, Unum Life, excuse me, Unum America, I'm sorry, Unum Provident did not have discretion, and so, therefore, there's no discretion. In Zunderfer and Campbell, it was the same factual situation, but in both of those cases, the district court held it was the entity with discretion that made the decision. So none of those cases stand for the proposition that when a decision is made by an entity with no discretion, if it's doing so with the direction of an entity with discretion, we're just going to ignore that there's no delegation. Well, it seems like what my takeaway, and so I wanted to be able to ask you that, is that, you know, the courts have employed, you know, de novo review in the cases where they have relied on evidence that showed that those who made the claims decisions were not acting as authorized agents. You know, the decision makers were not acting as authorized agents of that fiduciary, and I'm just trying to think, how is that the case here? Well, your Honor, again, there isn't a case, any place, standing for the proposition that when an entity with discretion uses an authorized agent with no discretion to decide cases, that discretion automatically flows between them. And in fact, as I said at the beginning of this argument, that's directly contrary to Shane, because in Shane there was an authorized agent. It was the MRC. They were working for Mr. Snow. Mr. Snow had discretion. So, you know, under that fact situation, which is essentially the same fact situation here, why did the Shane court say that de novo review applied? It's because in spite of the fact that the MRC was working for Mr. Snow, it did not itself have discretion. Did you want to reserve a couple minutes? I sure would, Your Honor. If there's no further questions at this time, I would certainly appreciate that. Okay. Let's let Mr. Curtis go ahead and proceed. Thank you, Your Honors. Good morning. Casey Curtis on behalf of the Apple Entertainment Industry Flex Plan. So I guess I'll start just very briefly by addressing the discretionary issue, the applicable standard of review, and whether there was a grant of discretionary authority to Anthem. You know, I think Mr. Pettit correctly states that, you know, he did have an argument in his briefing about the ASA not being effective. You know, we haven't really focused on that argument here. So I'm happy to stand on my papers on at least that issue unless there's any specific questions. And then kind of turning to the nub of this, which I think is the agency question, the agency determination, you know, I think it's important to take a step back and recognize that in, you know, Metro Life Insurance Company, you know, this court held that agency principles apply in the context of ERISA review and ERISA claims. Admittedly, that case did not involve the circumstance we have here, which is, you know, what happens and to what extent can a fiduciary use agents to, you know, act on its behalf. But I think, as the panel is correctly noting, you know, the Zern, Dorfer, and Campbell cases did address that issue. Admittedly, they're district court decisions. You don't have to follow them if you don't want to. But I think that the reasoning that they articulate is persuasive. And I think, you know, in this case, Judge Fitzgerald, you know, carefully considered it and correctly followed it. Effectively, what those courts have said is that when you have a valid grant of discretionary authority to a fiduciary, who's an entity, you know, by definition, a corporation only does actions, you know, on, you know, through authorized agents, right? A corporation is not a person. A corporation can't take actions other than through its representatives. And that there's nothing inappropriate about relying upon, you know, individuals who work for affiliates to basically perform discretionary tasks on behalf of the ultimate entity who has the discretionary authority. And in that case, I would disagree. Sorry, did you have a question? No, I think this is a really important point, and you seem to be eliding it. You're treating it as though all agency principles apply and that there's nothing special about this particular function, which is a function that requires the exercise of discretion. And of course, in ERISA, that's a really important function. And there's lots and lots of case law about that function. So before you go on, opposing counsel's argument is that if agency were enough, and agency relationship were enough, the outcome of shame would have been different. Do you want to speak to that? Yeah, yeah, no, I think I appreciate that. And, look, that is an important issue. I think what you're getting at is effectively the reductio ad absurdum, right, that if you were to take this principle and apply it indefinitely, then you'd never need a delegation. But I think that that's really a different issue than effectively what the findings are here. And in that regard, that was actually the next point that I was going to address, which is the district court actually finds that Anthem is the one who makes the decision, not Anthem-UM. And I'm looking at excerpt to record line 19. And relying upon the Zerndorfer and the Campbell cases, the district court concludes that Anthem, with the help of its affiliate, Anthem-UN, makes the decision. And if you look at what the Zerndorfer cases and Campbell cases are discussing, it's the idea that, look, it's not uncommon. Corporations only act through agents. They walk through individuals. And the fact that the individual, you know, is employed by or is associated with an affiliate doesn't mean that they're ultimately acting on behalf of the corporation. Any discussion right there to say, you know, with the help of an agent? Don't we need to put some clothes on that and flesh that out a bit about, you know, what does that mean? It's one thing to have folks who are helpers compiling medical records, doing research and whatnot. I don't know what it means to say they made the decision with the help of. Where should we look for that? Is that truly new territory for us? Well, I think the answer is, you know, go ahead about what the Zerndorfer and Campbell cases say, which is the ultimate question of who makes the decision is a factual one, right? And in this context, I would submit that Judge Fitzgerald found that Anthem is the one who made the decision. Yeah, go ahead. Didn't he say he made the decision with the help of? I mean, you changed your statement here. Which is it? I think it's with the help of. It is. It's both. But I think it's two parts, right? He made the decision. Anthem made the decision with the help of its affiliate or representatives of its affiliate. And again, this gets back to, I think, what the rationale articulated in the Zerndorfer and Campbell cases is, which is effectively that corporations only act through agents and that it's not uncommon in a corporate context to have affiliates who perform roles for other representatives of affiliates perform roles on behalf of other affiliates. Do we need to make new law? I think in this case, because we're presented with the factual findings of agency, there isn't a need to reach the issue that at the end of the day, the standard of review of the factual findings of the ultimate determination of whether they did act as the agent and the ultimate determination of who made the determination are really the factual ones that are being challenged. There wouldn't be reason to make new law here. Sorry. I think, to me, the legal issue is whether, as a matter of law, the agency relationship is sufficient. Do we need to make new law about that? I don't know how we reaffirm without making that. Well, I think that the Saylor's case already has held, at least in this court, and obviously under the law of the circuit doctrine, this court is bound by the three-judge panel decision in that case, that Saylor's recognizes that agency applies in ERISA. And if agency applies in ERISA, then if the factual finding is Anthem made the decision, and then there's a question of, well, but... That wasn't the factual finding. The factual finding is that Anthem made the decision with the help of it. Again, I would break it into two parts. I think it's a factual finding, Anthem made the decision, and with the help of the agents. And, again, what the district court relies upon is the Zuerendorfer and Campbell cases that discuss the concept that corporations only act through agents, and it's not uncommon for a corporation to have its agents— sorry, an affiliate of a corporation have employees who perform roles for multiple corporations. And I think if you look at this case through that lens, that's effectively what the court found, is that, yes, clearly Anthem UN is involved in the process. But I don't think you can say from the record that the finding that Anthem makes a decision with the help of Anthem UN and its affiliates doesn't mean that the Anthem UN employees and representatives aren't making the decision on behalf of Anthem. Let's suppose that Anthem appointed an independent company as the gatherer of all the facts in the making of a recommendation, and Anthem merely rubber-stamped the recommendation. Would your answers be the same? I think that circumstance would be different. I think that gets to the reductio ad absurdum that I was trying to allude to, which is you can't just use agency to replace the requirement of a valid delegation of authority. So, shouldn't the record have had some indication of whether or not Anthem UN was a subsidiary that exercised independence or not? Some subsidiaries are independent. Well, and that kind of gets to my next point, which is, you know, the case was by stipulation tried on the administrative record. And the administrative record doesn't contain any information about this particular issue. So, you know, when Judge Fitzgerald is looking at the record and he's trying to just discern what's a fair reading of what happened, he makes his findings about what occurs. And that's the nature of ERISA. You know, it's somewhat of a quick and dirty process. We just look at the administrative record. We just look at, you know, effectively what's presented. And we're trying and the judge's task of trying to, you know, make reasonable findings based upon it. And I think in this context, we have affiliates who are involved. You know, he has a factual finding that it's affiliate Anthem UN. Anthem UN clearly has a relationship with Anthem. The administration services agreement actually references, you know, Anthem having its affiliates assisting. I understand what you're saying, but all of this hides the really pressing human issue. Here's this very sick young man. Nothing works. His doctors think that what might work is some kind of a way of suppressing the runaway immunity system of the body. They think that this is a case not with just the pediatric autoimmune neuropsychiatric disorder, but it's also associated with streptococcal infection and perhaps the problem is the immunity. And so they want to use a drug that has not been tested in this situation. They think it's appropriate and necessary because nothing else has worked. They think it's clinically appropriate and might be effective. They think it's within the standards of good medical practice to try a drug like this when everything else has failed. And that given the context, it's the most appropriate procedure, even though there is no valid scientific evidence that the expected benefits would be clinically significant in this particular issue. In other words, most of the definitions of medically necessary are there, not all. And the problem then gets subsumed into our questions about agency. Instead of a high-level anthem official making this decision with regard to this poor, unfortunate 10-year-old, it's sort of passed down to be treated as a routine matter into a subsidiary. Now, if you look at it through that kind of a window, does any answer change? Obviously, there's a lot to your question. And look, there's no way to look at this case and not feel for the claimant. I'm very troubled by this because there is medical experience with drugs that are not used in one particular incident. And they are found to be effective in that incident. Yeah. And nothing else has worked here. Nothing. Now, the real question is should the insurance company pay for this experimental device or not? But that's a question of medical necessity in the context of trying to cure a 10-year-old who has shown violence to his sister and his mother and to everyone else, wants to commit suicide, and has this terrible disease. There's a human story here that we need to uncover through all these layers of technical agency and the like. And I fully appreciate and understand that I have little kids under five myself. And when I got involved in this case, there's no way you don't read the records and feel for the claimant and the claimant's family. That said, we have a definition of medical necessity in the plan. And the other thing I think that is somewhat important to kind of keep in mind as a countervailing consideration here is this case is not against Anthem. This is a lawsuit against the Entertainment Industry Flex Plan, which is by definition a self-funded health care plan. That means that the contributions from the plan come from plan members, and expenses are directly coming from a pool of people. It's not as if there's just an insurance company with an infinite pool of money to pay things. The fiduciaries of the plan have to consider how expenditures on behalf of the plan, whether they're authorized, and how that will impact the other beneficiaries, because if the plan spends more money, then that directly comes out of everyone's pocket, because, again, this is a self-funded plan. Kind of turning just very briefly to the question of medical necessity, this is potentially to answer Judge Christian's question about whether we should have a presidential decision here. That also provides a separate basis to decide this case based upon the facts that are presented, which is I don't think that even under a de novo standard review, the standard of medical necessity is met. It defines, and I think that's subpart eight, medical necessity to mean supported by scientific literature, valid scientific literature. And I think as we've tried to explain as best we can, although admittedly there's a lot of dense material here, there is anecdotal evidence to suggest, and I think one of the articles says very strong anecdotal evidence, to suggest that IVIG works for PANS. But that's not clinical scientific evidence that, as we try to explain as best we can in our brief. This disease has not been around for a long time in terms of its name. It may have been around, but it's not been named for a long time, and doctors are not focused on it. Besides the point, the real question, I guess, is was there an abuse of discretion, or do we do de novo review? I think that that's the more meaty legal issue, is the applicable standard review. I think when you look at obviously the facts, as I indicated, we would submit that either way, if it's abuse of discretion, the level of deference makes this probably a little bit easier to not have to weed through the medical evidence. But even if it was a de novo standard review, the plan says the administrator is going to look at clinical guidelines in considering making medical necessity determinations, which indisputably Anthem did. The claimant obviously takes issue with what the guidelines say, what they have. They don't specifically address plans, but as I think the trial court correctly found, that's really because they can't list every single procedure out there. And then if you dive into the medical research, I think that that's consistent with what the guidelines say. Well, let me ask you about, if I can ask you a question about the guidelines. It seems from the record that the IBIG guidelines have been updated two to three times per year over the last, I think, 15 years. And I just wanted you to talk to me, if you could, about the process for updating the guidelines and what triggers revisions, for example. I don't think we have anything specifically in the record. I think the record does indicate that they are updated. But again, because this is a case that's tried on the administrative record, no testimony is provided to provide any context for it. I don't know that we have anything in the record to demonstrate one way or the other what would trigger a review or how frequently. There's no law that says that this is a 12C case rather than a Rule 56 case. Maybe if the record's not wide enough or deep enough or contextual enough, we ought to send it back so the judge can have a, the district judge could perhaps take some facts. So this case actually was a bench trial. It was tried on the administrative record by agreement of the parties, but we actually have findings of fact and conclusion of law following the bench trial. Can I ask, you have a little bit of judgment. Can I ask one? Sure. Just counsel one more time. I don't know if you got back to my question. I want to make sure I'm following your point. Under the rule you're advancing, which is that agency applies to risk cases, would the outcome of Shane have been different? I'm trying to remember your exact contextualization of the question. I think, and I'm trying to say this, is agency can't supplant the requirement of a delegation. You can't just say one fiduciary has discretion and therefore that means everyone who ever acts for that fiduciary is acting as agent. I don't, I would not be advocating for a rule that broad. I don't think that's right. I don't think the district court cases would support that. So what are you advocating for? Because that's what I hear you saying. So please correct me. What are you advocating for? So I think in this, effectively what Campbell and Zern Dorfer said, which is in this, you know, very limited context where you have a valid delegation of authority to a company, and then the company acts through it basically is acting through agents by definition. There's nothing inappropriate about letting that company use, you know, Thank you. So I see him out of time, so with that I would respectfully move to defer. Thank you very much. We can go back to give Mr. Petty his last remaining time. I think it's two minutes and 12 seconds. Yes, Your Honor, and thank you. First, let me address the issue of whether the, you know, the findings of fact are clear as to who made the decision here. And let me, you know, direct the attention to the excerpts of record, page 11, lines 26 through 28. On February 7, 2018, Anthem UN sent both Dr. Darter and Corbin a letter denying the request for IVIG treatment. The denial determination was made by Anthem UM's medical director, Dr. Robert O'Boyle. Your Honor, that could not be clearer. The decision was made by Anthem UM and Anthem UM alone. That's entirely consistent with the evidence in the record. You know, all the denial letters are clear they're coming from Anthem UM. There's not a shred of evidence of any involvement whatsoever by Anthem employees in the decision-making process. And really, this is not an issue that was challenged in the briefing. I mean, this is sort of being raised for the first time on oral argument. And I think if the court will look back at the records, we'll see there's a real absence of this type of discussion in the brief because it really wasn't an issue. Yes, I'm sorry, Your Honor. On this point, forgive me for interrupting, but I spent quite a bit of time with this record. And I know the record sites that you're referring to now. I took those as statements in context, maybe too generously. But I took them as Anthem UM announced the decision. But you just said that there's no indication that Anthem participated. Is that what you meant to say? I meant precisely, Your Honor, there's no evidence whatsoever that any employees of Anthem ever participated in this decision-making process. All right. Thank you. With respect to the agency argument, Your Honor, I believe that FlexPlanet is really sort of reading this out of context. First off, by the way, on oral argument, as I did in my papers, I issued a challenge. I said, look, there are no cases standing for the proposition that when an entity with discretion uses another entity to decide cases, there's no discretion unless there's an effective delegation. And, you know, the only case that counsel comes up with is Salyers, which is not a standard of review case. Mr. Petty. I'm sorry, Your Honor. Let me just interrupt. This is kind of different. Here the insurance company, which is the delegee, Anthem, organizes itself in such a way as to have employees dealing with a certain type of case be organized and paid through either a subsidiary or an affiliate. That's how Anthem works. To say that this is the same case as someone who's independent or outside the company, it's stretching a point. The point is this is Anthem, and Anthem works through its particular organization known as Anthony UN. That's what the district judge really found. Your Honor, I mean, it's insane that there's the MRC, the Medical Review Committee, that was all made up of people employed by Albertson, the employer. Those weren't people that were, you know, outside the company. They were inside the company. You know, everything that happened in Shane v. Albertson's was inside the company, but the law is that you have to have an effective delegation of discretion to the entity that actually makes the decision. And, you know, there's numerous cases that stand for that proposition, and there's no cases that do not. Let me, I mean, as an example of the agency issue, I mean, Anthem UM at one point turned to Dr. Snyder for an opinion as to medical necessity. Now, Dr. Snyder is not an Anthem UM employee. She works for a company called MES, which is a claims review service. No one would argue, in spite of the fact that she made a decision, no one would argue that this was MES's decision. The fact of the matter is that she was doing it at the behest of Anthem UM, and the denial went out on an Anthem UM letterhead and signed by an Anthem UM employee, and so we're saying it's an Anthem UM decision. These are factual issues which will result at the district court. And, Your Honors, I know I'm running a little long, but if you could just give me another 30 seconds to kind of address the medical issues. I really disagree with the notion that PANS is experimental. I mean, there's guidelines promulgated by a panel of experts put together by the National Institute of Health that have issued clinical guidelines for using PANS to treat, excuse me, IDIG to treat PANS. That was cited by Dr. Moore in his letter explaining why the treatment was safe and effective and the only reasonable treatment for Corbin. And in terms of the plan's discussion as to whether it's medically necessary, they never decided whether it was medically necessary. All they decided was it's not within our guideline, and Counselor made what I think is a remarkable assertion when he said, well, okay, yeah, the guideline doesn't really address whether IDIG is safe and effective for PANS, but, you know, they can't address everything. And clearly that's correct, but, you know, when it doesn't address it, then you've kind of put the guideline to the side. I'm sorry, Your Honor. Yeah, I just, you know, not just your time is up. If you could just take a breath and calm down just a little bit. I'm very sorry, Your Honor. I just want to ask you, did you make these agency arguments to the district court? Was that? Oh, I most certainly did, Your Honor. I just wanted to make sure of that. All right. Yeah, and I mean, you know, the briefs are not before the court, but the transcript is, and you could see I argued, I made all these arguments there. Thank you, Mr. Curtis. I appreciate it. Unless Judge Hellerstein or Judge Christin have anything else, I think we're done. Okay. And, Your Honor, if I could just apologize, it's very hard to make these arguments over the phone, and I'm sure I cut off various judges and was missing all the visual cues, and I'm very sorry about that. Okay. Thank you, Mr. Curtis. We're done. I'm sorry. Mr. Petty, thank you very much. We appreciate it. And then, Mr. Curtis, thank you for your oral argument presentation. Sure. The Ryan E. versus Entertainment Industry Flex Plan, an Anthem Blue Cross Life and Health Insurance Company, is now submitted.
judges: Murguia, Christen, Hellerstein